CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

NOV 02 2012

JULIA C. DUDLEY, CLERK
BY: /s/
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DORIS M. POTTER,<br><br>                                       *Plaintiff,*<br><br>v.<br><br>BIG LOTS STORES, INC.,<br><br>                                       *Defendant.* | CIVIL ACTION No. 6:12-CV-00003<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

      This case, involving the 94-year-old Plaintiff's trip-and-fall while exiting a Big Lots Store (the "store") in Madison Heights, was removed here from the Amherst County Circuit Court. Defendant[1] has filed a motion for summary judgment. As explained further herein, a business owes a duty to exercise "ordinary" care for customers when they are on the business's premises, and such "ordinary" care means that a business has an obligation to remedy or warn of defects on its premises of which it has knowledge or should have knowledge, except for those defects that are open and obvious to a reasonable person exercising ordinary care for her own safety. Here, the summary judgment record shows an absence of evidence to support Plaintiff's claim that there was any defect at all. Accordingly, I will grant the motion for summary judgment.

---

[1] Claims against another Defendant (the store manager) have been voluntarily dismissed.

# I.

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). To preclude summary judgment, a factual dispute must not only be material, but also "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *See Glover v.*

*Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact." (citing *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001)). Indeed, a trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

## II.

### A.

The complaint states that, at about 2:00 p.m. on March 17, 2010, Plaintiff, "an invitee at the Store," "slipped" upon exiting the store "on a rug that was curled up." Plaintiff "fell, sustaining bodily injuries."

Alleging that "[t]he aforesaid existence of the curled up rug on the floor of the Store constituted an unsafe condition," Plaintiff claims that Defendant owed her a duty of reasonable care, including the following: a duty to maintain the store's premises in a reasonably safe condition; a duty to discover an unsafe condition "and to foresee injury therefrom"; a duty to correct unsafe conditions; and a duty to warn invitees of an unsafe condition. Complaining that Defendant "knew, or in the exercise of ordinary care should have known, that the aforesaid unsafe condition existed" and that Plaintiff "would not discover the unsafe condition," Plaintiff adds that the "rug was severely worn," that the store manager "knew the condition of said rug, had noted its tendency to curl up, and had an affirmative duty to replace said rug," but "chose not to replace the rug, or to remove it, despite its worn and hazardous condition."

Plaintiff alleges that, "[a]s a direct and proximate result of the negligence and breach of duties owed to her," she "suffered personal injuries; has suffered and will continue to suffer pain

-3-

of body and mind; and has incurred and will continue to incur hospital, doctor and related health care bills in an effort to be cured of her injuries." She maintains that she "did not fail to mitigate her damages" and that she "was not contributorily negligent." She seeks "Three Hundred Fifty Thousand Dollars ($350,000.00) in compensatory damages, pre- and post-judgment interest, and the costs on her behalf expended."

## B.

Defendant has taken the depositions of Plaintiff and Estelle Eller, a friend of Plaintiff's who was accompanying her at the time of her fall. Plaintiff has deposed two employees of the store. The deposition testimonies are primarily focused on the facts related to Plaintiff's fall and her allegation that a rug (an entranceway door mat supplied by Cintas) located on the interior side of the store's front doors constituted an unsafe condition, and that Defendant failed to timely correct the unsafe condition.

Plaintiff was driven to the store by Estelle S. Eller, her friend of approximately 50 years. Eller accompanied Mrs. Potter while they shopped that day, a busy Saturday. As they were leaving the store, Plaintiff held onto Eller for support, as it was "commonplace" for her to do. Eller, who was in her early eighties at the time, stated that Plaintiff "always held to me, she didn't turn loose."

Regarding the ladies' departure from the store, Plaintiff was asked, "As you were walking up to the front of the exit, did you see the mat before you came to it? The rug that was at the front of the door, did you see it?" Plaintiff relied, "No, I did not." She replied, "No," when she was asked, "Other than feeling your foot catch on the mat, do you have any reason to believe that it was not lying flat on the ground?"

Eller testified as follows:

-4-

Q: Now, you've testified that there was some type of carpet, rug, or may I say mat?

A: A mat. It's like all the stores use, you know, those type of mats.

* * *

Q: Now, as you approached the door, you testified that you believe that one of the corners of this mat –

A: When I looked when she was falling, it was just folded up like this.

Q: Okay. That's what I'm going to have you describe in a little bit more detail, so let me finish this question.

As you were approaching the doorway, you have testified that there was a mat there and that there was one of the corners that was turned up or under, is that correct?

A: I don't know. She said she hung her foot in the rug, and so I -- when I looked when she was falling, it was just a corner turned up, you know --.

* * *

Q: All right. Now, when you and Mrs. Potter are headed toward the exit door, you've testified that there was a corner that was turned up.

A: Not –

Q: Or turned down.

A: I didn't see it before she fell.

Q: I understand. Was it turned up or turned down when you first saw it?

A: It was turned up.

Q: It was turned up?

A: But she was falling then.

After Eller stated that, "[w]hen [she] looked up [Plaintiff] was falling, [and the corner of the mat] was turned up," her testimony continued as follows:

Q: Now, by "turned up" you mean if you took the corner of this mat and took the bottom part and kind of rolled it up toward the top or the top portion of the mat, that that's what you mean?

A: Yes, the top.

Q: All right. Okay. It was not tucked under, in other words?

A: No, no, I didn't -- as I say, I didn't see anything myself. I was seeing the lady that was waiting for us, and then all of a sudden my friend, she began to fall.

\* \* \*

Q: Now, at some point in time do you see the mat with the corner curled up?

A: No, I didn't, not before she was falling no, no.

\* \* \*

Q: And you don't know how long the turned-up corner of the mat had been turned up?

A: No, I don't, huh-uh.

Plaintiff and Eler do not testify that the corner of the mat was turned up before Plaintiff fell. Assuming that the corner of the mat was turned up, there is no evidence of how long it may have been turned up.

Other than Eller, the only other witness to have observed Plaintiff's fall is Donna Guthrie, an employee of the store who was re-entering the store after having been outside on her lunch break. Guthrie is the individual Eller identifies as "the lady that was waiting for us" at the door to exit the store. Guthrie testified that she was "actually holding the door open for them to come out and while I was standing there holding the door is the same time she fell." She stated that the mat was "rolled up under the bottom of [Plaintiff's] foot," "[a]s if her shoe had rolled over top of it and rolled the rug up."

The other store employee who has been deposed, assistant manager Jodi Cudney,

-6-

testified that, when she arrived at the scene after the incident, the mat was "flat," that it was not deteriorated or fraying, and that it did not have the appearance of being old or well-worn. Cudney testified that the doors are double doors that open outward, that the floor beneath the mat is off-white, and that the mats are "normally black or grey."[2] She stated that the mat is replaced by Cintas every two weeks, that it was four feet by six feet, and that it is inspected and vacuumed before the store is opened for business in the morning. Cudney described the entryway of the store as lit with fluorescent lighting and sunlight through "lots of windows." The other witnesses could not testify about the condition of the rug, and generally have not made any statements to contradict Cudney's statements. Plaintiff herself testified that the area was "well lit."

### III.

Plaintiff's entire case is based on the speculative assertion that, when she fell, the entry area rug was already "bumped up." The record discloses no evidence to support that contention. Plaintiff did not testify in her deposition that she saw the rug in a "bumped up" condition before she fell, and Eller, her companion, did not testify that the rug was "bumped up" before Plaintiff fell. Indeed, when asked, "Other than feeling your foot catch on the mat, do you have any reason to believe that [the mat] was not lying flat on the ground?" Plaintiff replied, "No." Eller stated, "When I looked up she was falling, it was turned up," but when asked whether she had seen "the mat with the corner curled up," she replied, "No, I didn't, not before she was falling . . . ." Although Plaintiff speculates that the mat was not inspected frequently or thoroughly enough,

---

[2] Plaintiff described the mat as having various colors, including yellow and orange.

she and Eller stated that, when they entered the store, they did not observe the mat in a "bumped up" condition, and no one else who went through the entryway observed the mat "bumped up" or with an upturned corner.

Under Virginia law,[3] a plaintiff asserting a negligence claim must introduce "evidence which constitutes proof that the defendant breached some duty which it owed the plaintiff, and caused, by such breach, [the] injury." *Colonial Stores Inc. v. Pulley*, 203 Va. 535, 537 (1962) (citing *Murphy v. J.L. Saunders, Inc.*, 202 Va. 913, 917 (1961)). A business owes its customers a duty to exercise ordinary care for those customers when they are on the business's premises. *See Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 182 (1990) (citing *Colonial Stores*, 203 Va. at 537). The exercise of ordinary care includes a store's obligation to remedy or warn of defects on its premises of which it has knowledge or should have knowledge, except for those defects that are open and obvious to a reasonable person exercising ordinary care for her own safety. *Fobbs v. Webb Bldg. Ltd. P'ship*, 232 Va. 227, 229 (1986). The plaintiff bears the burden of proving negligence. *Safeway Stores, Inc. v. Tolson*, 203 Va. 13, 15 (1961). Significantly,

> negligence cannot be presumed from the mere happening of the accident. The burden is upon the plaintiff to prove that the accident was due to the negligence of the defendant as a proximate cause. What is proved must establish more than a probability of negligence. Inferences must be based on facts, not on presumptions. It is incumbent upon the plaintiff to show why and how the accident happened. If that is left to conjecture, guess or random judgment, the plaintiff is not entitled to recover.

*Murphy*, 202 Va. at 917 (citations omitted).

---

[3] Defendant removed this case from the Amherst County Circuit Court to this court pursuant to this court's original jurisdiction under 28 U.S.C. § 1332(a), as there is complete diversity between the parties and the amount in controversy exceeds $75,000. Federal courts sitting in diversity apply the substantive law of the forum state. *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991). Therefore, the elements of Plaintiff's negligence claim are drawn from Virginia substantive law.

Case 6:12-cv-00003-NKM-RSB   Document 38   Filed 11/02/12   Page 8 of 10   Pageid#: 262

Here, as in *Murphy*, "[t]he defendant was not an insurer of plaintiff's safety. The measure of defendant's duty to plaintiff was that of ordinary care." *Id.* The "'possibility' that a fact exists is not enough to take issue of the sphere of pure conjecture and rank speculation into the realm of legitimate inference, sufficient for a jury to be permitted to consider the question." *Page v. Arnold*, 227 Va. 74, 79 (1984). Plaintiff has not come forth with sufficient evidence to bring the issue of causation out of pure conjecture and speculation. Nor has she established that Defendant had notice or even constructive notice of an unsafe condition. "Constructive knowledge or notice of a defective condition of a premise or a fixture may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 246 Va. 239, 242 (1993) (citations omitted). There is no evidence here in the first instance that the entrance mat was in any condition that constituted a safety hazard, and it nearly goes without saying that it would be difficult for Defendant to have had any notice, constructive or otherwise, of a condition of which there is not even the merest "scintilla of evidence." *Anderson*, 477 U.S. at 252.

## IV.

The essence of Plaintiff's claim is that, because she fell, there *must* have been an unsafe condition, notwithstanding the absence of any evidence showing negligence on Defendant's part. However, in the absence of evidence supporting a *prima facie* case of negligence, summary judgment must be granted in favor of the defendant. To rule otherwise in the complete absence of evidence would leave the question of negligence to speculation and conjecture. *See Murphy*, 202 Va. at 917.

The Clerk of the Court will be directed to send a certified copy of this memorandum

opinion and the accompanying order to all counsel of record.

Entered this 2nd day of November, 2012.

                                                  NORMAN K. MOON
                                                  UNITED STATES DISTRICT JUDGE